1   **Michael F. Babitzke - SBN 50048**
Michael F. Babitzke, Inc.
2   6 South El Dorado Street, Suite 305
Stockton, California 95202
3   Telephone: (209) 465-5722
Facsimile: (209) 465-0714
4
**Jeffrey A. Silvia - SBN 121065**
5   Law Offices of Jeffrey A. Silvia
3439 Brookside Road, Suite 205
6   Stockton, CA 95219
Telephone: (209) 952-9396
7   Facsimile: (209) 952-9399

8   Attorneys for Plaintiffs,
JAMES ALBERT WELLS and JUDY C. WELLS
9
                    UNITED STATES DISTRICT COURT
10                  EASTERN DISTRICT OF CALIFORNIA
                         FRESNO DIVISION
11

12   JAMES ALBERT WELLS and JUDY C.          CASE NO.
WELLS,
13
            Plaintiffs,
14
vs.                                          **COMPLAINT FOR DAMAGES**
15
COUNTY OF STANISLAUS; DEPUTY
16   FRANK ALVES; DEPUTY J. WALSH;            **Jury Trial Demanded**
CITY OF WATERFORD; SHERIFF DEPUTY
17   JOSHUA HOUTCHENS; PUBLIC WORKS
EMPLOYEE STEVE GREEN; MATTHEW
18   ERICKSON PUBLIC WORKS DIRECTOR
FOR CITY OF WATERFORD; CHARLES
19   DESCHENES CITY ADMINISTRATOR FOR
CITY OF WATERFORD; SHERIFF ADAM
20   CHRISTIANSON; TASER INTERNATIONAL;
ROB JACKSON Chief of Police Services;
21   and DOES 1 through 25, inclusive,

22            Defendants.
_____/
23
                    **I.   INTRODUCTION**
24
        1.   On August 15, 2007 James Edward Wells was killed in the front yard of his
25
neighbor's home when law enforcement officers mistakenly interpreted his epileptic seizure as
26
a drug induced stupor. Law enforcement officers were despatched for assistance with
27
                        Complaint for Damages
28                                 1

1  combative male. When they arrived they found Mr. Wells dressed only in shorts in a disoriented
2  state. When he failed to promptly respond to their commands to get on the ground they shot
3  him with a taser. The officers immobilized him face down handcuffed behind the back-
4  rendering him unable to obtain adequate oxygen, causing his death.

5      2.      This is an action for money damages brought pursuant to
6  42 U.S.C. § 1983, 1988 and the Fourth Amendment to the United States Constitution, and
7  under the common and statutory law of California. Defendants violated the rights of James
8  Edward Wells, the deceased son of the plaintiffs, under the Fourth Amendment to the United
9  States constitution and the laws of the State of California when they unlawfully failed to
10 accommodate, seized and restrained him, shot him with a taser, held him face down on the
11 lawn of his neighbor's yard, ignored his cries for help, used excessive force, and cause the
12 asphyxiation of Mr. Wells and ultimately, his death.  Defendant's conduct under color of state
13 law proximately, caused the deprivation of Mr. Wells' federally protected rights, Defendants'
14 conduct done willfully and wantonly, also gives rise to supplemental and pendent state claims.

15                    **II.   JURISDICTION AND VENUE**

16     3.      This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C.
17 §1331 because this action arises under the Constitution and laws of the United States, and
18 pursuant to 28 U.S.C. § 1343(a)(3) because this action seeks to redress the deprivation, under
19 color of state law, of plaintiff's federally-protected constitutional rights.

20     4.      Venue is proper under 28 U.S.C. §1391(b) because all defendants reside in this
21 district, and because the events and omissions giving rise to plaintiffs' claims occurred in this
22 district. This Court has supplemental jurisdiction over Plaintiff's state claims pursuant to 28
23 U.S.C. 1367, and the statutory conditions precedent to plaintiffs' state law claims, contained
24 at C.R.S. § 24-10-109, have been satisfied. Jurisdiction supporting plaintiffs' claim for attorney
25 fees and costs is conferred by 42 U.S.C. § 1988.

26                        **III.   PARTIES**

27     5.      Plaintiff, James Albert Wells, at all times material to this complaint, was a citizen
28 of the United States of America and a resident of California and is the father of the late James

1  Edward Wells who died without issue or spouse. James Albert Wells is a lawful heir under
2  California law and is entitled to bring this action pursuant to CCP §377.11.

3       6.     Plaintiff, Judy Wells, at all times material to this complaint, was a citizen of the
4  United States of America and a resident of California and is the mother of the late James
5  Edward Wells who died without issue or spouse. Judy Wells is a lawful heir under California
6  law and is entitled to bring this action pursuant to CCP §377.11.

7       7.   Decedent James Edward Wells, at all times material to this complaint, was a citizen
8  of the United States of America and a resident of California.

9       8.    Defendant, County of Stanislaus, is a municipality and/or governmental entity
10  located in the state of California , and a person within the meaning of 42 U.S.C. § 1983.

11       9.   Defendant, Frank Alves, at all times material to this complaint, was a Deputy Sheriff
12  with the County of Stanislaus. He was acting under color of state law at all times material to
13  plaintiff's U.S.C. § 1983 claims. In his official capacity, upon information and belief, he was
14  enforcing and acting pursuant to a policy, custom, usage, and patterns and practice of the
15  County of Stanislaus.

16       10.    Defendant, J. Walsh, at all times material to this complaint, was a Deputy Sheriff
17  with the County of Stanislaus. He was acting under color of state law at all times material to
18  plaintiff's U.S.C. § 1983 claims. In his official capacity, upon information and belief, he was
19  enforcing and acting pursuant to a policy, custom, usage, and patterns and practice of the
20  County of Stanislaus.

21       11.    Defendant, City of Waterford, is a municipality and/or governmental entity located
22  in the State of California, and a person within the meaning of 42 U.S.C. § 1983.  Defendant
23  Rob Jackson, although employed by Stanislaus County Sheriff's Office was the chief of law
24  enforcement services for the City of Waterford;

25       12.   Defendant, Joshua Houtchens, at all times material to this complaint, was a deputy
26  sheriff with the County of Stanislaus. He was acting under color of state law at all times material
27  to plaintiffs' U.S.C. § 1983 claims. In his official capacity, upon information and belief he was
28  enforcing and acting pursuant to a policy, custom, usage, and patterns and practice of the

1    County of Stanislaus.

2       13.    Defendant, Steve Green, at all times material to this complaint, was a public

3    works employee with the city of Waterford. He was acting under color of state law at all times

4    material to plaintiffs' U.S.C. § 1983 claims. In his official capacity upon information and belief,

5    he was enforcing and acting pursuant to a policy, custom, usage, and pattern and practice of

6    the City of Waterford.

7       14.   Charles Deschenes at all relevant times was city administrator for City of Waterford

8    and was enforcing and acting pursuant to a policy, custom, usage, and pattern and practice of

9    the City of Waterford;

10      15.   Matthew Erickson at all relevant times was the public works director at the City of

11    Waterford and was enforcing and acting pursuant to a policy, custom, usage and practice of

12    the City of Waterford;

13      16.   DOES one through twenty-five are entities or individuals whose exact identities are

14    unknown to plaintiffs, but may have also violated the Constitutional Rights of James Edward

15    Wells. They were acting under color of state law at all times material to plaintiffs' U.S.C. § 1983

16    claims and were acting under color of sate law and in their individual and official capacities. At

17    such time as their identities are known to plaintiff's, plaintiffs will substitute the real parties in

18    interest for the named Does.

19      17.    On or about January 10, 2008 the claim which is attached as **Exhibit A** and

20    incorporated in full by this reference was submitted to the Stanislaus County.

21      18.    On or about February 20, 2008 the County of Stanislaus rejected said claim. A

22    true and correct copy of said rejection is attached hereto and marked as **Exhibit B** and

23    incorporated in full by this reference.

24      19.    On or about January 10, 2008 the claim with the City of Waterford was presented

25    on behalf of James Wells. A true and correct copy of said claim is attached hereto and marked

26    as **Exhibit C** and incorporated in full by this reference.

27      20.    On or about February 22, 2008 the claim was rejected by the City of Waterford.

28    A true and correct copy of said rejection is attached hereto and marked as **Exhibit D** and

1    incorporated in full by this reference.

2        21.   Taser International is a corporation organized pursuant to the laws of the State of

3    Arizona and at relevant times has done business on an ongoing basis in the State of California.

### IV. FACTS OF THE INCIDENT
### THAT GIVES RISE TO THE LAWSUIT

4

5        22.   James Edward Wells suffered cardiorespiratory arrest on the front lawn of his

6    neighbors home while defendants and each of them bore down on his back with all of their

7    body weight.

8        23.   James Edward Wells has suffered with the disease of epilepsy since about the age

9    of seven.   At about the age of 13 his seizure activity progressed to the level of grand- mal

10   Tonic-clonic seizures. Epilepsy, also referred to as a seizure disorder, is generally defined by

11   a tendency to have recurrent seizures, unprovoked by any known cause. A seizure is a change

12   in sensation, awareness, or behavior brought about by a brief electrical disturbance in the brain.

13   Seizures vary from a momentary disruption of the senses, to short periods of unconsciousness

14   or staring spells, to convulsions.

15       24.   His seizures have never been completely controlled and about once a month he

16   would experience Tonic-clonic seizure which usually begins with a sudden cry, fall and raggedly

17   (tonic phase) followed by muscle jerks, shallow breathing or temporarily suspended breathing

18   and change in skin color (clonic phase), possible loss of bladder or bowel control which usually

19   lasts for a couple minutes followed by one to several hours of confusion and fatigue. This later

20   seizure phase is called post-ictal confusion and leaves the victim incoherence, and unable to

21   respond to contact. He is not violent during those seizures.

22       25.   Post-ictal confusion leaves the sufferer in a loss of contact with surroundings. This

23   is often followed by chewing movements with the mouth, picking at or fumbling with clothing,

24   mumbling and performing simple unorganized movements over and over again. Sometimes

25   people wander around during this state of confusion leaving their existing location completely

26   unaware of what he/she was doing or where they were.

27       26.   Although someone may appear to be conscious because he or she remains

28

1  standing with eyes open and moving about, it will be an altered consciousness- a dreamlike,
2  almost trance like state. A person may even be able to speak, but the words are unlikely to
3  make sense and he or she will not be able to respond to others in an appropriate way.

4      27.    Typically, post-ictal confusion starts with a blank stare and loss of contact with
5  surroundings. This is often followed by chewing movements with the mouth, picking at or
6  fumbling with clothing, mumbling and performing simple, unorganized movements over and
7  over again.  In some cases, Tonic-clonic seizures followed by post-ictal confusion may cause
8  a person to engage in more significant behaviors such as undressing, screaming, running and
9  flailing. The actions and movements are typically confused and unfocused (that is, not directed
10  at a specific person or object) during a Tonic-clonic seizure.

11      28.  The Epilepsy Foundation has repeatedly stated that a cardinal rule in the handling
12  of any seizure is that the person should not be restrained in any way, unless it is essential for
13  his or her personal safety or the safety of others. It is well-known in the law enforcement
14  community that restraining someone face-down and/or with his or her arms restricted behind
15  his or her back is especially dangerous and can cause asphyxiation.

16      29.    On August 15th, 2007 James Edward Wells lived in apartment #2 at 128 S.
17  Western Avenue in the city of Waterford, California. His front door faced Western Avenue and
18  is the southern most apartment in the complex.

19      30.    On the morning of August 15th 2007, Mary Helms, a close acquaintance of the
20  decedent was walking by his apartment at about 8:00 a.m. when she noticed that the apartment
21  door was open. The door is fifteen (15) to twenty (20) feet from the side walk where Mary was
22  passing. As she passed she heard what sounded like moans and cries coming from within the
23  apartment. She knew that the decedent suffered with epilepsy and she believed that he may
24  be having a seizure so she looked in through the open door of the apartment.

25      31.    Mary saw the decadent stumbling around his apartment dressed only in boxer
26  shorts. She felt uneasy about intruding into the apartment under the circumstances so instead
27  she ran back to her apartment and called Joann Wallken, the decedents girlfriend. Mary
28

1   explained to Joann what she saw and asked her to rush over and met her at the decadent's
2   apartment.

3       32.   When Mary and Joann arrived at decedent's apartment they discovered that he
4   was not there.

5       33.   On August 15, 2007 Nora Winn and Vicki George lived in a single family dwelling
6   located at 320 South Western Avenue in the city of Waterford, California. Their house was just
7   a few houses down from decadents apartment. Shortly after 8:00 am Nora Winn heard a noise
8   in the back yard. She looked through the window and saw a man (Decedent James Edward
9   Wells) wearing shorts but no shirt. Ms. Winn shouted at the man telling him to leave. The man
10  did not respond.

11      34.   Instead of leaving, the man went around the house to the front door and attempted
12  to force the door open. Both Ms. George and Ms. Winn tried to prevent the man from entering
13  the house but they were unable.

14      35.   James Edward Wells made his way into the George/Winn house. Ms. Winn
15  grabbed a baseball bat and struck Wells with bat. Wells did not resist or attack, but, looked
16  straight at Winn and said "help me, help me".

17      36.   Winn offered to help Wells, but only if he left her house. At that point Wells fell to
18  the kitchen floor suffering yet another Tonic-clonic seizure. He laid there for a moments then
19  stood and walked out the front door in a state of post-ictal confusion. As he stumbled out the
20  front door he had this blank stare and he was saying some gibberish.

21      37.   Wells stumbled over to a porch swing located on the front porch and sat down.
22  Eventually he got up from the swing and started to stumble into the front yard. As he stumbled
23  into the front yard a marked sheriff's vehicle arrived with lights flashing and sirens sounding.
24  Defendants Frank Alves and Joshua Houtchens exited the vehicle.  James Edward Wells
25  started to walk in their direction. Defendants Alves and Houtchens shouted at him to stop. He
26  did not respond and continued to walk toward them with a blank stare on his face.      3 6 .
27  Defendant Houtchens moved quickly toward decedent James Edward Wells extended his arm
28  and attacked decedent James Edward Wells with a forearm smash to the throat in an attempt

1   at using a clothesline type maneuver to knock him off his feet.  This effort failed.  Defendant

2   Houtchens then moved around behind Wells, bear hugged him and attempted to lift him off his

3   feet and throw him to the ground.  This effort also failed.          37.     When defendant

4   Houtchens was unable to bring decedent James Edward Wells to the ground he shouted to

5   defendant Alves to tase decedent James Edward Wells. Defendant Alves was reluctant to tase

6   Wells while defendant Houtchens was holding on to decedent James Edward Wells.

7   Defendant Houtchens shouted to defendant Alves "now". Defendant Houtchens let go of Wells

8   and shouted "yes, now" whereupon defendant Alves shot Wells with the taser from about four

9   (4) to six (6) feet away.

10          38.   The barbs of the taser stuck into wells bare chest. Defendant Houtchens activated

11   the taser several times.  Wells did not fall down, but stumbled in the direction of his house and

12   pulled at the wires in an attempt to remove the barb from his chest.  At the same time

13   defendants and each of them began to spray pepper spray into decedent James Edward Wells'

14   face.

15          39.   Defendants and each of them then began to hit decedent James Edward Wells

16   on his legs with their police batons and/or metal asps.

17          40.   Eventually, decedent James Edward Wells fell to the ground.  When he did

18   defendants and each of them got on top of him and attempted to place handcuffs on him.

19   Wells was positioned face down on the front lawn while defendants and each of them had their

20   hands and knees on his back applying force in an effort to keep decedent James Edward Wells

21   on the ground.  All the while decedent James Edward Wells was pleading "you're hurting me!"

22   "Get off of me!"

23          41.   After much struggle defendants and each of them were able to cuff Wells' hands

24   behind his back.  The defendants and each of them did not monitor the welfare of decedent

25   James Edward Wells after this violent struggle.  A short time after this a bystander shouted out

26   that Wells was not breathing and that he was turning blue.

27          42.   Defendants and each of them failed to take proper measures to assist Wells and

28   restore his breathing.  Decedent James Edward Wells was allowed to lay on his neighbors front

1  lawn with his hands cuffed behind his back while all law enforcement personnel, paramedics
2  and fire department personnel took no action to save his live. Decedent James Edward Wells
3  remained hand cuffed until he was loaded into the Oak Valley Hospital District Ambulance.

4      43.   Defendants and each of them, without proper medical training, made a medical
5  decision that decedent James Edward Wells had died and simply left him laying handcuffed
6  in the hot sun to die.

## V. FIRST CLAIM FOR RELIEF

**Brought Pursuant to**
**Title 42 U.S.C. § 1983**
**Fourth Amendment Violations**
**Deputy Frank Alves, Deputy J. Walsh,**
**Officer Joshua Houtchens, Steve Green and Does 1-10**

11      44.   Plaintiffs incorporate all other paragraphs of this complaint for purposes of
12  this claim and further alleges:

13      45.   At all times relevant to the allegations in this complaint Defendants Alves,
14  Walsh, Houtchens, Green and Does 1-10 acted under color of state law.

15      46.   Defendants Alves, Walsh, Houtchens, Green and Does 1-10 are persons
16  within the meaning of 42 U.S.C. § 1983.

17      47.   Under the circumstances as they existed on August 15, 2007, Defendants
18  Alves, Walsh, Houtchens, Green and Does 1-10 had a duty not to use excessive or deadly
19  force during their encounter with James Edward Wells, not to effectuate an arrest of James
20  Edward Wells without probable cause or even if probable cause was present not use
21  excessive force under the circumstances.

22      48.   Defendants Aves, Walsh, Houtchens, Green and Does 1-10 acting within the
23  course and scope of their employment and under the color of state law perpetrated an
24  objectively unreasonable seizure and the use of excessive force against James Edward
25  Wells, resulting in his asphyxiation and death and arrested him without probable cause nor
26  a warrant.

27      49.   Each Defendant had an affirmative duty to intercede on behalf of James
28  Edward Wells, whose constitutional rights were being violated in each Defendant's

1  presence by other state actors.

2      50.    Defendants, despite their presence and opportunity, failed to intervene or

3  otherwise take reasonable steps to prevent the unconstitutional deprivation of James

4  Edward Wells' Constitutional rights and failed to prevent his death and in fact caused the

5  death of James Edward Wells.

6      51.    Defendants, Alves, Walsh, Houtchens, Green and Does 1-10 acted jointly and

7  with mutual understanding in restraining Wells. By acting in concert to seize and restrain

8  Wells, Defendants all personally contributed and conspired to commit unlawful acts by the

9  use of excessive force inflicting injury and death upon James Edward Wells.

10     52.    Defendants, Alves, Walsh, Houtchens, Green and Does 1-10 violated  clearly

11 established law of which a reasonable officer or emergency responder should have known.

12     53.    Defendants, Alves, Walsh, Houtchens, Green and Does 1-10 caused Wells to

13 be deprived of his rights, privileges and immunities secured under the Fourth Amendment

14 to the United States Constitution.

15     54.    Defendants' actions were recklessly and callously indifferent to James Edward

16 Wells' Federally protected rights.

17     55.  As a direct and proximate result of the acts and omissions described herein,

18 Defendants, Alves, Walsh, Houtchens, Green and Does 1-10 are liable in damages to

19 Plaintiffs for deprivations of their rights and those of James Edward Wells under 42 U.S.C.

20 § 1983.

21                  **VI.    SECOND CLAIM FOR RELIEF**

22                        ***Monell* Liability**
                        **County for Stanislaus,**
23           **Sheriff J. Walsh, Joshua Houtchens and Frank Alves**

24     56.  Plaintiff incorporates all other paragraphs of this Complaint for purposes of this

25 claim and further alleges:

26     57.  James Edward Wells' Fourth Amendment rights were violated by defendants

27 Alves and Walsh, in the manner detailed above.

28     58.    The County of Stanislaus is a person within the meaning of 42 U.S.C. § 1983.